<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

JENNIFER CATO,

                Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA,

                Defendants.

Civil Action No. 21-10056 (SDW)(ESK)

**OPINION**

July 29, 2022

**WIGENTON**, District Judge.

Before this Court are Defendant Unum Life Insurance Company of America's ("Defendant" or "Unum") and Plaintiff Jennifer Cato's ("Plaintiff") Motions for Summary Judgment (D.E. 21, D.E. 22) brought pursuant to Federal Rule of Civil Procedure ("Rule") 56. Venue is proper pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's Motion for Summary Judgement is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

**I.**     <u>**BACKGROUND AND PROCEDURAL HISTORY**[1]</u>

In this action, Plaintiff, a forty-eight (48) year-old woman who worked as a Principal Traffic Engineer with Parsons Corporation ("Parsons") prior to ceasing work due to alleged

---

[1] Record citations in this opinion are generally to Defendant's Statement of Undisputed Material Facts (D.E. 21–1), Plaintiff's Response to Defendant's Statement of Material Facts (D.E. 24–1), Plaintiff's Statement of Undisputed Material Facts (D.E. 22–1), Defendant's Response to Plaintiff's Statement of Material Facts (D.E. 23–1), as well as the record citations contained therein.

disability, seeks continued disability benefits under a group policy of disability income insurance

bearing Policy Number 338223 001 (the "Policy") issued by Unum to Plaintiff's employer

Parsons. (D.E. 23–1 at ¶ 1, D.E. 22–1 at ¶ 1.) The Policy[2] is part of an employee welfare benefit

plan (the "Plan") governed by the Employee Retirement Income Security Act of 1974 (ERISA),

29 U.S.C. § 1001, et seq. (D.E. 22–1 at ¶ 2.) At all relevant times, Plaintiff was an employee of

Parsons and eligible to participate in the Policy.[3] (D.E. 22–1 at ¶ 3.)

**The Policy**

Under the Policy, Parsons is the Plan administrator and Unum is the claims fiduciary

designated to evaluate claims and pay benefits under the Policy. (D.E. 22–1 at ¶ 5, D.E. 23–1 at ¶

5.) The Policy provides that Unum has discretionary authority to make benefit determinations.

(POL–42.)

The Policy further states that you are "totally disabled":

> *During any period covering disability for your occupation, own occupation, normal occupation, regular occupation or usual occupation when a disability renders you unable to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation in the usual and customary way.*
>
> *During any period covering disability from any occupation, any other occupation, any gainful occupation, any other gainful occupation, reasonable occupation, or another occupation when a disability renders you unable to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation in the usual and customary way and unable to engage with reasonable continuity in another occupation in which you could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, physical and mental capacity.*

---

[2] For ease of reference, the Group Long Term Disability Policy bearing bates stamp UA-POL-LTD-000001 et seq. that is attached as Exhibit A to Defendant's Statement of Undisputed Material Facts and as Exhibit 14 to the Certification of Sara E. Kaplan, Esq. will be referred to as "POL–1".

[3] A Certificate of Coverage under the Policy was issued to employees, including Plaintiff herein. (POL–12.)

> *"Substantial and material acts"* as used in the above definition of disability, means acts that:
>
> - *Are normally required for the performance of your usual occupation or another occupation; and*
> - *Cannot be reasonably omitted or modified.*
>
> *"Usual occupation"* means the substantial and material acts you are routinely performing for your employer when your disability begins.

(D.E. 23–1 at ¶ 7, *see* POL–2) (emphasis in original).

The Policy further provides that "[y]ou are disabled when Unum determines that:"

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness or injury;** and
- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury; and
- during the elimination period, you are unable to perform any of the material and substantial duties of your regular occupation.

You will continue to receive payments beyond 24 months if you are also:

- working in any occupation and continue to have a 20% or more loss in your indexed monthly earnings due to your sickness or injury; or
- not working and, due to the same sickness or injury, are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

(D.E. 22–1 at ¶ 18, *see* POL–16) (emphasis in original).

Significantly, for the first 24 months of a claim, benefits are payable if the employee is unable to perform the material and substantial duties of the employee's "regular occupation." (POL–16.)  Thereafter, benefits will continue if the employee is unable to perform the duties of "any gainful occupation."  (*Id.*)  If an insured's disability is due to Mental Illness as defined in the  Policy, benefits are limited to 24 months.  (*See* POL–21.)

Mental Illness is defined as:

> [A] psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment. [R. at 000034.]

(D.E. 22–1 at ¶ 21, POL–34.)

## Plaintiff's Benefits Claim

Plaintiff submitted a claim for long-term disability benefits alleging to be disabled from her occupation as a transportation and traffic engineer as of October 20, 2015[4], *inter alia*, due to sleep disorder, syncope, migraines, fibromyalgia, and anxiety.  (D.E. 21–1 at ¶ 8, R. 11–12[5].)

On October 30, 2015, Plaintiff first sought treatment with Dr. Sary Aristy, M.D.,[6] ("Dr. Aristy") due to fatigue and autoimmune work up.  (D.E. 21–1 at ¶ 25, D.E. 23–1 at ¶ 20, R. 97–98.)  Plaintiff reported, *inter alia*, ongoing fatigue, intermittent right hip pain, and poor sleep. (D.E. 21–1 at ¶ 25, R. 97–98.)   Physical examination of Plaintiff's "head, neck, spine, glenohumeral joint, elbows, wrists, MCP, PIP and DIP joints, hips, knees, ankles, subtalar, MTP and interphalangeal joints is within normal limits" with "normal range of motion" and "normal strength." (R. 98.)  A neurological exam revealed unremarkable cranial nerves and no motor or

---

[4] Plaintiff originally submitted her claim for long term disability with a reported date of disability in 2017, but later reported impairment dating back to October 2015.  (R. 4619.)

[5] For ease of reference, the Joint Administrative Record ("Record" or "R.") bearing bates stamp UA-CL-LTD-000001 et seq. attached as Exhibit A to Defendant's Statement of Undisputed Material Facts and attached as Exhibit 14 to the Certification of Sara E. Kaplan, Esq. will be referred to as "R. 1" when citing to documents that are a part of the Record.

[6] Defendant's Statement of Undisputed Material Facts states that Plaintiff sought treatment with Dr. Miriam Silverberg, M.D. on October 30, 2015, November 20, 2015, and February 26, 2016.  However, the medical reports in the Record document that Plaintiff sought treatment with Dr. Aristy, not Dr. Silverberg on the above-referenced dates. (*See* R. 97–103.)

sensory deficits.  (*Id.*)  Dr. Aristy noted that it was "[u]nclear as to source of variable symptoms" and that there was "[n]o significant pain to consider Fibromyalgia as a diagnosis."  (*Id.*)  Plaintiff was not advised to stop working.  (*Id.*)  Plaintiff continued treatment with Dr. Aristy on November 20, 2015 and February 26, 2016.[7]  (D.E. 21–1 at ¶¶ 27, 28, D.E. 23–1 at ¶¶ 21, 27, R. 99–103.) Examination notes continued to demonstrate that Plaintiff's head, neck, spine, hips, knees, ankles, and joints were "within normal limits" with "normal range of motion" and "normal strength." (D.E. 21–1 at ¶¶ 27, 28.)  Plaintiff's gait was also unremarkable.  (D.E. 21–1 at ¶ 27.)  Dr. Aristy continued to note that it was "[u]nclear as to source of variable symptoms" and that there was "[n]o significant pain to consider Fibromyalgia as a diagnosis."  (D.E. 21–1 at ¶¶ 27, 28, R. 99–103.)

Thereafter, on June 30, 2016, Plaintiff sought treatment with Dr. Miriam Silverberg, M.D. ("Dr. Silverberg"), a Board-Certified Rheumatologist, due to fibromyalgia and fatigue.  (D.E. 21– 1 at  ¶ 29, D.E. 23–1 at ¶ 31, R. 104.)  Treatment notes demonstrated that Plaintiff improved with Lyrica but had recurrent muscle and joint pain.  (D.E. 21–1 at  ¶ 29, R. 105.)  Plaintiff reported difficulty sleeping, fatigue, and pain "making her feel depressed."  (*Id.*)  Plaintiff was not advised to stop working.  (*Id.*)  For the next several months, Plaintiff continued treatment with Dr. Silverberg through July  2017.[8]  (D.E. 21–1 at ¶¶ 30, 31–35, 37, 38, D.E. 23–1 at ¶¶  33, 34, 35,

---

[7] Plaintiff's Statement of Undisputed Material Facts states that Dr. Aristy evaluated Plaintiff on November 29, 2015 and February 26, 2016.  (D.E. 23–1 at ¶¶ 21, 27.)  Defendant states that Plaintiff visited Dr. Silverberg on February 16, 2016.  (D.E. 21–1 at  ¶ 28.)  However, the medical reports in the Record document that Dr. Aristy evaluated Plaintiff on November 20, 2015 and February 26, 2016.  (*See* R. 99–103, 1324–1328.)

[8] Plaintiff visited Dr. Silverberg on September 29, 2016, December 8, 2016, February 7, 2017, and July 27, 2017. During this time, Plaintiff underwent x-rays and other examinations.  On February 14, 2017, Plaintiff had x-rays of her cervical spine, right shoulder, and lumbar spine to due neck and back pain revealing, *inter alia*, mild reversal of cervical lordosis at C3/4 and C4/5, mild reduction in disc height at T5-6, and early degenerative spurring at C5 (R. 185); discogenic endplate sclerosis at L1-L2 and L2-L3 and slight diastasis and minimal malalignment at AC joint, and no evidence of fracture, dislocation, or focal osseous lesion (R. 187–188); and no pathologically significant abnormality at the lumbar spine (R. 227).  (D.E. 21–1 at ¶¶ 32-34, D.E. 23–1 at ¶¶ 36, 37.)  In August  and September 2017, Plaintiff underwent electroencephalogram and EMG/NCV.  (D.E. 23–1 at ¶ 41, 42, R. 310, 318-320.)  On September 7, 2017, an MRI of Plaintiff's brain was completed due to complaints of headaches.  Results were "unremarkable." (D.E. 21–1 at  ¶ 37, R. 182.)  An October 9, 2017 MRI of Plaintiff's cervical spine was "normal."

38, R. 106–113.)  Examination notes documented that Plaintiff saw improvement with pain as a result of working from home.  Plaintiff reported that her pain occurred less frequently, but she still needed "Naproxen and Flexural for episodes of pain every few weeks[.]"  (D.E. 21–1 at  ¶ 31, R. 108.)  On December 8, 2016 and February 7, 2017, Dr. Silverberg noted Plaintiff's Fibromyalgia was "4/18".  (D.E. 23–1 at ¶ 34, 35, R. 1335, 1337.)  At a July 27, 2017 visit with Dr. Silverberg, Plaintiff  reported having "episodes of anxiety."  (D.E. 21–1 at  ¶ 35, R. 112.)  Dr. Silverberg did not recommend Plaintiff stop working. (R. 106–113.)

On July 27, 2017, Unum received a Certificate of Health Care Provider from Dr. Silverberg advising that Plaintiff needed a family medical leave of absence ("FMLA") due to fibromyalgia causing muscle aches and joint aches.  (D.E. 21–1 at ¶ 23, R. 92–96.)  Thereafter, on August 15, 2017, Dr. Silverberg submitted an Attending Physician Statement ("APS") identifying Plaintiff's limitations as "no meetings, field work, multiple assignments or work that require quick turnaround as this is too stressful."  (D.E. 21–1 at ¶ 24, R. 72–73.)  Dr. Silverberg also noted Plaintiff's primary diagnosis as fibromyalgia and her secondary diagnosis as fatigue.  (*Id.*)  On August  18,  2017,  Plaintiff's FMLA claim was rejected because Plaintiff's physician did not recommend that she stop working due to her conditions.  (D.E. 21–1  at  ¶ 36.)

On November 15, 2017, Plaintiff began treatment with neurologist Dr. Antwan Ahad, M.D. ("Dr. Ahad") due to reported brain fog, pressure in head, numbness in feet, fatigue, and daily headaches.  (D.E. 23–1 at ¶ 43, R. 331–333.)  Dr. Ahad noted Plaintiff's complaints of severe migraines, pain, and nausea.  (*Id.*)  Plaintiff was diagnosed with moderate depression.  (*Id.*)  Dr. Ahad examined that Plaintiff had a positive Romberg test; difficulty standing on one foot; and 5/5 motor strength in the upper and lower extremities.  (D.E. 23–1 at ¶ 45, R. 332.)  Dr. Ahad reevaluated Plaintiff again on December 8, 2017, noting that Plaintiff had moderate depression; a

positive Romberg test; and acute bilateral lower back pain without sciatica.  (D.E. 23–1 at ¶ 46, R. 334–336.)

On February 16, 2018, Plaintiff reported to Unum that her last day of work was sometime in July 2017 and that she had been working from home for the year prior because she had difficulty dealing with her medical issues and working at the same.  (D.E. 21–1 at ¶ 41.)[9]  On or about February 26, 2018, Dr. Ahad submitted an APS to Unum identifying Plaintiff's primary diagnosis as "acute bilateral back pain without sciatica," with a secondary diagnosis of "intractable migraine headaches, syncope and collapse, anesthesia of the skin, frequent headaches, and neck pain."  (D.E. 21–1 at ¶ 44, R. 561–564.)  Dr. Ahad identified Plaintiff's restrictions and limitations as "avoid lifting weight, prolonged sitting and standing."  (R. 563.)  In treatment records from March 8, 2018, Dr. Silverberg noted Plaintiff's limitations as joint and muscle pain, headaches causing difficulty working, and anxiety causing difficulty finishing tasks.  (D.E. 21–1 at ¶ 46, R. 809.)

On March 22, 2018, Unum's disability benefit specialist ("DBS"),  clinical  consultants, vocational consultant, and medical consultant Robert Nosaka, M.D., Board Certified in Internal Medicine ("Dr. Nosaka") reviewed the Record and determined that the  evidence supported Plaintiff's lack of functional capacity for sedentary work from July 27, 2017 through the end of June 2018.  (D.E. 21–1 at ¶ 47, R. 163–164.)  On March 30, 2018, Unum notified Plaintiff that it had approved her claim for long-term disability benefits, with a disability date of July 27, 2017.[10]  (D.E. 21–1 at ¶ 48, R. 1107–1112.)

---

[9] On February 27, 2018, Plaintiff submitted a Work Experience & Education Questionnaire listing her job title as "Principal Traffic Engineer" and listing her key job functions.  (D.E. 21–1 at ¶ 45, R. 576-577.)

[10] Plaintiff requested that her long-term disability claim be considered for an earlier date of disability.  (D.E. 21–1 at ¶ 50.)  Unum requested additional documentation.  (D.E. 21–1 at ¶ 51.)  Based on a review of all additional documentation submitted, on February 19, 2019, Unum reset her date of disability to October 20, 2015, resulting in additional benefits that Unum paid to Plaintiff.  (D.E. 21–1 at ¶ 75, R. 2399–2400.)

On May 5, 2018, Dr. Silverberg identified that Plaintiff "cannot sleep, cannot keep schedule, workload/pressure causes anxiety/disruption, light headedness, headaches." (D.E. 21–1 at ¶ 52, R. 1281–1284.)  On May 7, 2018, Unum's vocational specialist Karen A. Moore, MS, CRC, Sr., VRC determined that Plaintiff's occupation in the local economy is consistent with a "Principal Engineer," which required "light work" exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move object; frequently sit; occasionally stand and walk; and formulate plans and policies.  (D.E. 21–1 at ¶ 53, R. 1516–1518.)  Dr. Silverberg submitted an updated APS on July 5, 2018 identifying Plaintiff's limitations again as "no meetings, fieldwork, multiple assignments or work that requires quick turnaround as this is too stressful." (D.E. 21–1 at ¶ 55, R. 1890-1892.)

On July 11, 2018, Dr. Nosaka (Unum's on-site physician) reviewed the available medical records and opined that Plaintiff was likely precluded from her occupation from October 30, 2015 forward, but that given the minimal physical exam findings, and the improvement in her headaches, she was not precluded from March 9, 2018 forward from performing the duties of her occupation. (D.E. 21–1 at ¶57, R. 2011–2013.)  Dr. Nosaka then issued a report dated August 7, 2018, opining that Plaintiff's restrictions and limitations were not supported because the diagnostics and physical exams revealed minimal findings; the treatment plan had been medication management with no adverse side effects; and Plaintiff's "restrictions and limitations are behavioral." (D.E. 21–1 at ¶¶59, 60, R. 2027.)

Dr. Nosaka further noted that Plaintiff's treating neurologist, Dr. Ahad, released her to return to work as of March 26, 2018, and opined that "given the unremarkable diagnostic and physical exam findings, the conservative treatment plan and the release to work, I opine that the insured is not precluded from performing the duties of her occupation." (D.E. 21–1 at ¶61, R.

2028-2030.)  Dr. Nosaka found that Plaintiff was not physically limited from performing the light work required of her occupation as a traffic engineer.  (R. 2028–2030.)  Thereafter, the entire Record was submitted for a second independent medical review to Norman Bress, M.D. ("Dr. Bress"), Board Certified in Internal Medicine and Rheumatology, who concluded that there was insufficient medical evidence to support restrictions and limitations preventing Plaintiff from performing the duties of her occupation.  (D.E. 21–1 at ¶¶64-66, R. 2032–2037.)  Dr. Bress further noted that there was "nothing unusual or atypical about the insured's [Fibromyalgia] to preclude" her from work full time in her usual occupation.  (*Id.*)

Thereafter, Unum continued to review updated medical records from December 2018 through March 3, 2020, relevant to Plaintiff's claim for benefits.  On December 4,  2018, Plaintiff reported that her psychiatrist decreased one medication and added two medications for depression.  (D.E. 21–1 at ¶ 69.)  On February 7, 2019, Plaintiff's psychiatrist Dr. Soto-Perello ("Dr. Soto-Perello") noted treatment for "increasing symptoms of anxiety, depression and pain secondary to her fibromyalgia."  (D.E. 21–1 at ¶ 74, R. 2348-2355.)  Treatment records from psychiatrist Jonathan Carvajal, M.D. ("Dr. Carvajal") dated February 22, 2019, diagnosed Plaintiff with Major Depressive Disorder and Generalized Anxiety Disorder.  (D.E. 21–1 at ¶ 76, R. 2402-2404.)  On April 17, 2019, Plaintiff was admitted to Hackensack Medical Center for "shakes and twitching."  (D.E. 21–1 at ¶ 77.)  Treatment notes stated that Plaintiff was on "multiple psych medications and on multiple antidepressant medications."  (*Id.*)

Dr. Silverberg submitted an updated APS dated May 18, 2019 advising that Plaintiff's primary diagnosis was fibromyalgia and secondary diagnosis was depression/anxiety.  (D.E. 21–1 at ¶ 79, R. 2507–2509.)  Dr. Silverberg wrote that Plaintiff had "difficulty focusing [and] completing tasks due to anxiety."  (*Id.*)  In a field interview with Plaintiff on May 10, 2019,

Plaintiff stated that her primary condition was anxiety and that she was out of work since October 20, 2015, *inter alia*, due to fibromyalgia and anxiety. (D.E. 21–1 at ¶81, R. 2576-2589.) On May 30, 2019, Plaintiff's file was referred to clinical consultant Laurie Cygan, RN, BSN, LNC who found that the "reports of physical conditions and BH conditions do not appear to correlate with the clinical exam findings from treating [attending physicians] or rise to a level of impairment that would prevent [Plaintiff] from performing any occ activities." (D.E. 21–1 at ¶83, R. 2626-2630.) The clinical consultant concluded that Plaintiff did not have any physical/cognitive or mental health conditions that rose to a level of impairment that would preclude her from performing work activities. (*Id.*) On June 11, 2019, Dr. Silverberg conferred with Unum's Benefits Center psychologist Alex W. Ursprung, Ph.D. and concurred that Plaintiff had been psychiatrically impaired as of March 27, 2018 onward. (R. 2659-2660.) An updated APS from Dr. Silverberg dated November 4, 2019, stated "[Plaintiff] is unable to sit & work at the computer due to pain & headaches. She is unable to focus & complete tasks due to anxiety" (R. 2865–2867). Psychiatrist Dr. Catherine Shaloub's November 2019 Psychiatric Form and records noted that Plaintiff's symptoms were worsening but anticipated she could return to full time work on February 3, 2020. (R. 2902–2906).

On March 3, 2020, Dr. Nosaka concluded that "to a reasonable degree of medical certainty" the updated records did not alter his prior opinion that the medical evidence did not support that Plaintiff "was/is precluded due to a physical condition from [March 26, 2018] forward from performing the sustained full-time activities[.]" (D.E. 21–1 at ¶ 99, R. 3623–3630.) Dr. Bress concurred with Dr. Nosaka's opinion. (D.E. 21–1 at ¶ 100, R. 3647–3649.) Based upon a review of all the evidence in the Record, on March 13, 2020, Unum determined that Plaintiff was not eligible for continued benefits following the expiration of the 24-month mental illness maximum

benefit period.  (R. 3672–3673.)  Unum advised Plaintiff that it had determined that she did not have physical conditions resulting in a loss of functional capacity that precluded her from performing her occupational duties.  (D.E. 21–1 at ¶ 102, R. 3675–3683.)  Therefore, she was no longer eligible for benefits under the terms of the Policy.  (*Id.*)

**Plaintiff's Appeal of Unum's Claim Determination**

On September 9, 2020, Plaintiff appealed the claim determination and submitted supplemental medical records.  (D.E. 21–1 at ¶ 111, R. 3774-4129.)  On September 17, 2020, a second vocational review was performed by Unum's Senior Vocational Rehabilitation Consultant, G. Shannon O'Kelley, M.Ed., CRC, CEAS who found that Plaintiff's occupational duties included: exerting up to 10 pounds of force occasionally, mostly sitting, and walking and standing.  (D.E. 21–1 at ¶ 113, R. 4505-4507.)  On September 30, 2020, the medical records were referred to Elizabeth Israel, RN, BSN, Senior Clinical Consultant who concluded there were no documented pertinent abnormal physical findings and no musculoskeletal abnormalities to explain Plaintiff's symptoms and complaints, along with an unremarkable neurological evaluation.  (D.E. 21–1 at ¶ 114, R. 4520-4529.)

The medical records were then referred to Scott Norris, M.D., ("Dr. Norris") Board Certified in Family, Occupational, and Aerospace Medicine who found, among other things, that excluding conditions/symptoms caused by mental illness, the "medical evidence does not support ongoing R/Ls from 3/27/19-3/26/[20] that would have precluded the [Plaintiff] from performing the occupational duties listed above on full-time basis."[11]  (D.E. 21–1 at ¶¶ 116, R. 4536–4541.)  Further, "examinations did not describe cognitive impairment related to physical conditions."  (*Id.*)

---

[11]Dr. Norris issued an addendum opinion dated October 27, 2020 advising that he reviewed the additional medical records from Dr. Levine and determined that Dr. Levine's records did not change his original opinion that the restrictions and limitations for Plaintiff were not supported. (D.E. 21-1 at ¶ 118.)

Based upon the entire Record, Unum upheld its decision that Plaintiff was no longer limited from performing the substantial and material duties of her usual occupation after excluding disabilities due to mental illness and that the 24-month maximum benefit period had been paid for Plaintiff's disabilities due to a mental illness.[12]  (D.E. 21–1 at ¶¶ 120-129, R. 4618–4631.)

On April 22, 2021, Plaintiff initiated this action against Defendant alleging, *inter alia*, that Defendant improperly terminated Plaintiff's long-term disability benefits under the Policy in violation of the Policy and various provisions of ERISA.  (D.E. 1.)  Following discovery, Defendant and Plaintiff filed the instant Motions for Summary Judgment.  (D.E. 21, 22.)  All subsequent briefing was timely filed.  (D.E. 23, 24, 27, 28.)[13]

## II.   **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a

---

[12] During this time, Plaintiff also applied for social security disability ("SSDI") benefits on April 17, 2018.  (D.E. 21–1 at ¶ 49, R. 1155.)  On September 27, 2018, the Social Security Administration ("SSA") denied Plaintiff's claim, finding that she did not qualify for SSDI.  (D.E. 21–1 at ¶ 67, R. 2112.)  Thereafter, the SSA denied Plaintiff's request for reconsideration, stating that "[Plaintiff has] a history of fibromyalgia.  However, [Plaintiff] can do jobs that require light physical exertion. The evidence shows no other condition which significantly limits [Plaintiff's] ability to work." (D.E. 21–1 at ¶ 70, R. 2222.)  On December 17, 2019, Plaintiff's SSDI claim was denied by an Administrative Law Judge ("ALJ"), who found that Plaintiff had the residual functional capacity to perform light work.  (D.E. 21–1 at ¶ 93, R. 3127-3148.)  On October 13, 2020, the Appeals Council of the Social Security Administration upheld the ALJ's determination that Plaintiff did not qualify for SSDI benefits.  (D.E. 21–1 at ¶ 115, R. 4597-4601.)

[13] Plaintiff filed an impermissible sur-reply.  (D.E. 29.)  The Court entered an Order advising that it will not consider Plaintiff's submission.  (D.E. 31)

material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which ... [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate

the evidence and decide the truth of the matter, but to determine whether there is a genuine issue

for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment

simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v.*

*Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

## III.   DISCUSSION

### A. ERISA Standard of Review

When an ERISA benefit plan "gives the administrator or fiduciary discretionary authority

to determine eligibility for benefits or to construe the terms of the plan," courts will review a denial

of benefits under the deferential, "arbitrary and capricious" standard.[14] *McLeod v. Hartford Life*

*& Acc. Ins. Co.*, 372 F.3d 618, 623 (3d Cir. 2004) (citing *Firestone Tire & Rubber Co. v. Bruch*,

489 U.S. 101, 115 (1989); *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare*

*Plan*, 298 F.3d 191, 194 (3d Cir. 2002)); *see also Dowling v. Pension Plan for Salaried Emps. of*

*Union Pac. Corp. & Affiliates*, 871 F.3d 239, 245 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1032

(2018); *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008). Under

the arbitrary and capricious standard, the administrator's decision may be overturned "only if it is

'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *McLeod*,

372 F.3d at 623 (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

The scope of an "arbitrary and capricious" review is ***narrow***; "[a] court is not free to substitute its

own judgment for that of the [administrator] in determining eligibility for plan benefits."

*Doroshow v. Hartford Live and Acc. Ins. Co.,* 574 F.3d 230, 234 (3d Cir. 2009) (emphasis added).

Because the scope of review is limited, "'[r]eview under this standard requires the challenged

---

[14] The Third Circuit has made clear that if a plan gives the administrator "discretion in interpreting its terms and making benefit decisions," the denial of benefits is reviewed for abuse of discretion, which is equivalent to the arbitrary and capricious standard. *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792–93, n.6 (3d Cir. 2010). Accordingly, this Court refers to the "arbitrary and capricious" and "abuse of discretion" standards interchangeably.

decisions to remain intact unless it is not rational.'" *Dukes v. Liberty Life Assur. Co. of Bos.*, Civ. No. 14-00806, 2015 WL 4132975, *3 (D.N.J. July 7, 2015) (quoting *Lucash v. Strick Corp.,* 602 F.Supp. 430, 434 (E.D. Pa. 1984)). "Accordingly, 'deference should be given to the lion's share of ERISA claims.'" *Id.* (quoting *Shvartsman v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson,* Civ. No. 11–03643, 2012 WL 2118126, at *9 (D.N.J. June 11, 2012)).

The Policy in this case gives Unum discretionary authority to determine Plaintiff's eligibility for benefits and to interpret the provisions of the Policy. (D.E. 22–1 at ¶ 17, POL–42.) Plaintiff does not dispute this; therefore, this Court will review Unum's denial of Plaintiff's benefits claim under the arbitrary and capricious standard.

### B. Unum's Benefits Determination

This Court holds that Unum did not abuse its discretion in denying Plaintiff's benefits claim. Unum's final determination that Plaintiff was not eligible for continued benefits beyond the expiration of the 24-month mental illness benefit period because the Record did not evince that Plaintiff was disabled from a physical condition resulting in a loss of functional capacity precluding her from performing the substantial and material acts of her usual occupation is unequivocally supported by the record. (*See generally* R. 1–4642, *see also* D.E. 21–1 at ¶¶ 52–54, 57-61, 79, 83, 85, 90-92, 96-98, 116-117, 96-101, 120-129.) Unum's findings that Plaintiff's restrictions and limitations from March 28, 2018, through March 27, 2020, were due to mental illness, and that she thereafter had no non-behavioral health restrictions or limitations sufficient to warrant a finding of total disability is supported by substantial evidence, including, but not limited to, Plaintiff's treating physicians' reports, Unum's reviewing physicians, medical and vocational evidence, Dr. Nosaka's and Dr. Bress' reports, and Plaintiff's subjective complaints. (*Id.*) As

such, Unum's determination that Plaintiff was no longer eligible to receive long-term disability benefits was not arbitrary and capricious because the Record contains substantial evidence that to the extent Plaintiff suffers from any continuing restrictions or limitations, they are due to mental illness and not a physical condition.  (*See generally* R. 3675-3683, *see also* R. 4618–4631.)

The Third Circuit has made clear that the claimant bears the burden of establishing an entitlement to benefits and that a claim decision was arbitrary and capricious.  *See, e.g.*, *Krash v. Reliance Standard Life Ins. Grp.*, 723 F. App'x 106, 110 (3d Cir. 2018); *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).  While Section 1132(a)(1)(B) of ERISA provides the plaintiff a right of action "to recover benefits due to [her] under the terms of [her] plan", Plaintiff must demonstrate that she has 'a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits" to prevail on a claim under Section 1132(a)(1)(B).  *Fleisher v. Standard Ins. Co.*, 679 F.3d at 120 (internal citations and quotations omitted).

Plaintiff contends that Unum's final claim determination denying continued disability benefits under the Policy was arbitrary and capricious because medical records establish that Plaintiff is disabled by physical conditions precluding her from performing the material and substantial duties of her occupation.  (*See generally* D.E. 22–2.)  However, Plaintiff has failed to meet her burden of establishing that she is entitled to continued disability benefits under the Policy beyond the 24-month mental illness benefit period, and that Unum's claim determination was arbitrary and capricious.  *See Krash,* 723 F. App'x at 110 (explaining that "because of the 'mental or nervous disorders' limitation, in order to remain eligible for benefits past the 24-month mark, 'it was [Plaintiff's] burden to prove that she was totally disabled from any occupation solely due to a physical condition.'"); *see also Okuno v. Reliance Standard Life Ins. Co.*, 835 F.3d 600, 607–

09 (6th Cir. 2016). Plaintiff has pointed to no evidence in the Record establishing that she is totally disabled from physical conditions other than mental illness. (*See generally* D.E. 22–2.) Instead, Plaintiff cherry picks information from the medical reports to reach conclusions inconsistent with the record as whole. (*Id.*)

Unum has fully articulated its reasoning in making its determination that Plaintiff did not have restrictions and limitations from a non-behavioral health condition that rendered her totally disabled from her occupation. (*See generally* R. 3675-3683, 4618–4631.) Unum cites numerous physician reports, vocational evidence, and medical findings to substantiate its denial of Plaintiff's benefits: (1) Dr. Silverberg's May 5, 2018 records identifying, among other things, that Plaintiff "cannot sleep, cannot keep schedule, workload/pressure causes anxiety/disruption, light headedness, headaches" (D.E. 21–1 at ¶ 52, R. 1281–1284); (2) Dr. Silverberg's July 2018 APS advising that Plaintiff's restrictions were "no meetings, fieldwork, multiple assignments or work that requires quick turnaround as this is too stressful" (D.E. 21–1 at ¶ 55, R. 1890-1892); (3) Dr. Bress' and Dr. Nosaka's conclusions that there was insufficient medical evidence to support that Plaintiff was physically limited from performing the duties of her occupation as a traffic engineer (D.E. 21–1 at ¶¶ 59–61, 64–66, 99–100, *see also* R. 2027–2030, 3623–3630, 3647–3649); (4) psychiatrist Dr. Soto-Perello noting Plaintiff's history of anxiety and depression, as well as her "increasing symptoms of anxiety and depression and pain secondary to her fibromyalgia" (D.E. 21–1 at ¶ 74, R. 2348-2355); (5) Plaintiff's May 10, 2019 field interview advising that her primary condition was anxiety (D.E. 21–1 at ¶ 81, R. 2576-2589); (6) Dr. Silverberg's concurrence with Dr. Ursprung's finding that Plaintiff had been psychiatrically impaired as of March 27, 2018 onward (R. 2659-2660); (7) Dr. Carvajal diagnosis of Major Depressive Disorder and Generalized Anxiety Disorder (D.E. 21–1 at ¶ 76, R. 2402-2404); and (8) the ALJ's findings on Plaintiff's

claim for SSDI that Plaintiff had the residual functional capacity to perform light work with certain restrictions.  (D.E. 21–1 at ¶ 93, R. 3127-3148.)

Considering the medical evidence as a whole, relied upon by Unum in making its benefits determination, the Court cannot conclude that Unum's decision to terminate benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law."  (*See generally* R. 1–4642); *see also McLeod*, 372 F.3d at 623.  The medical reports were sufficient for Defendant to conclude that Plaintiff no longer met the definition of disability after the 24-month mental illness benefit period because the Record did not show a cognitive impairment due to a physical condition. (*Id.*, *see also* POL–2, POL–16, POL–21.)

Moreover, it was not arbitrary and capricious for Unum to rely on and give weight to the opinions of its own medical consultants reviewing the medical record in determining that Plaintiff was not physically disabled under the terms of the Policy.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (holding that "plan administrators are not obliged to accord special deference to the opinions of treating physicians").  "Courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Stratton v. EI DuPont de Nemours & Co.*, 363 F.3d 250, 243 Fed. Appx. 671, 673 (3d Cir. 2004) (affirming where the plan's medical consultants considered but disagreed with the treating physician's assessment); *Bluman v. Plan Adm'r & Trustees for CNA's Integrated Disability Program*, Civ. No. 10–2983, 2012 WL 3194431, *313, 315–316 (3d Cir. Aug. 8, 2012) (holding that "a professional disagreement" did not prevent the administrator from relying on an independent doctor's report).  A review of the entire Record as a whole demonstrates that Unum's benefits determination was fully supported by

substantial evidence.  (*See generally* R. 1–4642.)  Plaintiff's assertion that the medical records reviewed and relied upon in denying Plaintiff's claim were "selective" and "bias" is without merit. (D.E. 22–2 at 18-22.)

To the extent Plaintiff seeks to have the Court consider the SSA Notice of Award dated May 1, 2021,  that found Plaintiff "disabled from substantial gainful work", this Court will not do so.  (D.E. 24 at 12–16, D.E. 24–2.)  The SSA Notice of Award was issued months after Unum made its benefits determination and was not considered by Unum when making its determination.  (*Id.*)  This Court will review only evidence contained in the Record.

Upon reviewing the Record, this Court finds that Unum's determination was reasonable and based on substantial evidence.  *See, e.g., Werbler v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. 05-3528, 2006 WL 3511181, at *1, 3–4 (D.N.J. Dec. 5, 2006) (granting summary judgment to the insurance company where sufficient evidence from medical experts and the patient's prior medical history supported the insurer's decision to deny benefits).

IV.   **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**. An appropriate Order follows.

     /s/ Susan D. Wigenton     
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Edward S. Kiel, U.S.M.J.